IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WILLIAM DOUGLAS ATKINS | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:08CV235 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, William Douglas Atkins, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability (DIB) and Supplemental Security Income payments (SSI). The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 7) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

judgment (docket entry no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on December 13, 2004, claiming disability due to severe anxiety and panic attacks and head, shoulder, neck and back injuries with an alleged onset date of May 1, 2004. (R. at 80-82, 113, 354-56.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 44-46, 52-54.) Plaintiff requested a hearing and on May 28, 2007, accompanied by counsel, he testified before the ALJ. (R. at 369-402.) On May 10, 2007 the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because he had transferrable skills from prior relevant work that could be utilized in occupations that are not precluded by Plaintiff's residual functional capacity, such as jobs in telephone sales, or as an appointment clerk or order clerk. (R. at 20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 6-8.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

2

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

4

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

5

helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 16.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and a psychiatric disorder variously diagnosed as panic or anxiety, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 16-18.) The ALJ next determined that Plaintiff had the RFC "to lift twenty pounds occasionally, ten pounds frequently, stand/walk four hours in an 8-hour workday and sit for six hours in an 8-hour workday ." (R. at 18.) Additionally, the ALJ noted that nonexertionally, Plaintiff can "understand, remember and carry out simple and detailed instructions;" however, he cannot "perform intensive teamwork or transactional interaction." (R. at 19.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work in sales because "he cannot perform intensive teamwork or transactional interaction[s]." (R. at 18.) At step five, after considering Plaintiff's RFC and consulting a VE, the ALJ found that Plaintiff is capable of transferring skills that he acquired in past relevant work to other occupations which exist in significant numbers in the economy, and are not precluded by the claimant's RFC. (R. at 20.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 21.)

6

Construing Plaintiff's submission liberally, Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J "Pl.'s Mot.") In reading Plaintiff's Complaint and Motion for Summary Judgment together, it appears that he makes three arguments in support of his position: (1) he was not given enough time to submit new evidence; (2) the ALJ did not properly consider the opinions of Plaintiff's treating physicians; and (3) that substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled under the Act, because the ALJ improperly discounted Plaintiff's credibility. (Compl.; Pl.'s Mot.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof "Def.'s Mem." at 14.)

### 1. Plaintiff contends that the Social Security Commissioner erred by not allowing him to present new evidence to support his claim.

Plaintiff asserts that he was not permitted sufficient time to submit new evidence to support his case. (Compl.) Specifically, he states that he attempted to submit new evidence, but that he was told that his submissions were untimely. (Compl.)

A review of the record demonstrates that Plaintiff was given sufficient time to submit evidence relating to his case; and furthermore, there is nothing in the record indicating that Plaintiff was ever told that new evidence would not be considered. On October 21, 2005 Plaintiff requested a hearing by an ALJ, and a hearing date was set for January 30, 2007, giving the Plaintiff ample time to develop a record that supported his case. (R. at 55-56.) On the date of the hearing, the ALJ, a VE and Plaintiff's attorney all appeared; however, Plaintiff asked his counsel to reschedule the hearing due to personal illness. (R. at 401.) At that time, the ALJ

7

identified that he had Exhibits 1A through 14F and 1SSI through 11SSI in his file. (R. at 400.) He then informed Plaintiff's attorney, Mr. Sean Kavanagh, that he would reschedule the hearing and allow Mr. Kavanagh to further develop the record with any other pertinent evidence. (R. at 401.)

Plaintiff's hearing was rescheduled for March 28, 2007. (R. at 67.) On that date, the ALJ again confirmed what exhibits were in Plaintiff's file, and noted that exhibit 15F along with a handwritten list of medications had been added since the previous hearing date. (R. at 372.) After identifying what evidence had been submitted, the ALJ asked if Plaintiff had any objections to the exhibits being admitted into evidence. (R. at 372.) Neither Plaintiff nor his counsel objected. (R. at 372.)

Plaintiff's claim was denied on May 10, 2007 and on July 9, 2007 he submitted a request for review of the ALJ decision. (R. at 9.) On the form he submitted, it states in pertinent part: "If you have additional evidence submit it with this request for review. If you need additional time to submit evidence or legal argument, you must request an extension of time in writing now." (R. at 9.) When Plaintiff submitted this form, he did not include any additional evidence that he wanted considered by the Appeals Counsel, nor did he request additional time to submit new evidence. (R. at 9-10.) On February 5, 2008 Plaintiff's request for review was denied by the appeals board. (R. at 6-8.) After that date, there is no evidence in the record that Plaintiff further tried to contact the Social Security Administration or that he tried to submit further evidence. As the Plaintiff had ample time to submit evidence for review, and finding that all evidence submitted by the Plaintiff was appropriately accepted and considered, Plaintiff's claim is without merit.

## 2. Plaintiff contends that the ALJ did not properly consider Plaintiff's treating physician's opinions.

Plaintiff contends that the ALJ did not properly consider Plaintiff's treating physician's opinions. (Pl.'s Mot.) Specifically, Plaintiff believes that his treating physicians' opinions are unbiased, and together clearly show that he is disabled and unable to work. (Pl.'s Mot.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or

when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

A review of the Record demonstrates that the ALJ properly and thoroughly considered the medical opinions of Plaintiff's treating physicians. (R. at 16-20.) It was the medical records and doctor's reports from Plaintiff's treating physicians that formed the basis of the ALJ's opinion that Plaintiff has the severe physical impairments of degenerative disc disease of the cervical and lumbar spine and a psychiatric disorder variously diagnosed as panic or anxiety. (R. at 16-18.) The ALJ considered the medical tests and X-rays, as well as the different courses of treatment such as the physical therapy reports and medications that Plaintiff had been administered to alleviate his pain. (R. at 16-18.) The ALJ noted, as stated in Plaintiff's treating physicians' reports, much of the pain suffered by the Plaintiff subsided with proper treatment. (R. at 17.)   The Plaintiff contends that the ALJ erred in his analysis because Plaintiff's treating physicians' opinions indicate that Plaintiff is disabled as defined under the Act. (Pl.'s Mot.) Specifically, Plaintiff contends that Dr. Shelp, Dr. Poe, Dr. Decker and Dr. Saleeby all concur that Plaintiff is disabled. (Pl.'s Mot.) A review of the Record, however, does not support this argument. Dr. Decker treated Plaintiff for his back and neck pain and ordered an MRI of Plaintiff's lumbar spine. While Dr. Decker found that Plaintiff had some limitations due to mild degenerative disc disease with concentric disc bulge, he did not find that these limitations were enough to prevent Plaintiff from participating in work-related activities. (R. at 17, 220, 227.) Similarly, Dr. Poe was the physician who diagnosed Plaintiff's anxiety disorder and panic disorder, and he felt that with the proper medications, Plaintiff's condition was improving. (R. at 238.) At their last meeting, it was actually the Plaintiff who stated that he was feeling well enough to extend the period for his next medications check to three months. (R. at 238.)  At no

10

point in his records, did Dr. Poe indicate that plaintiff's anxiety and panic disorders would prevent him from work activities. (R. at 238-43.) In fact, after an intensive review of the record, this Court finds no physician opined that Plaintiff was disabled or permanently unable to work. On the contrary, the Record supports the ALJ's analysis of the medical opinions, evidence and testimony presented at the hearing. Therefore, this Court finds that the ALJ appropriately considered the opinions of Plaintiff's treating physicians.

3. **Plaintiff contends that substantial evidence does not support the ALJ's conclusion because the ALJ improperly discounted Plaintiff's credibility.**

Finally, Plaintiff asserts that the ALJ failed to properly substantiate his conclusion that the Plaintiff was able to perform sedentary occupations such as those in telephone sales, or as a sales clerk or appointment clerk. (Pl.'s Mot.) Specifically, he contends that the ALJ was biased against him, and that the evidence supports a finding that he is disabled under the Act. (Pl's Mot.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR

96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of his subjective complaints of pain and limitations as a result of his back injury, Plaintiff testified that he is constantly in pain from his cervical thoracic through the lumbar region. (R. at 379.) Plaintiff was asked to rate his pain on a scale of 1 to 10, and he stated that when he was on medication it averaged about a three; however, as he had not been able to get to his doctor's appointment two weeks prior, he was not currently on medications, so he ranked his pain at about a six or a seven. (R. at 379-80.) In addition to his pain, Plaintiff said he suffered considerable drowsiness, sleepiness and clouded judgment as a result of his various medications. (R. at 378.)

After hearing the testimony, the ALJ articulated a number of reasons for not fully crediting Plaintiff's testimony regarding his symptoms. After Plaintiff's attorney questioned Plaintiff about the extent of his pain, the ALJ asked the Plaintiff about an incident in 2000 where the Plaintiff had reported to a hospital complaining of severe pain due to a fall, but that the Plaintiff was seen in the hospital waiting room actively walking and sitting without any difficulty. (R. at 383.) When asked if the Plaintiff had a tendency to overstate his pain, the Plaintiff said that he didn't, but he also failed to recall the incident referred to by the ALJ. (R. at 383-84.) The ALJ then questioned Dr. Cooke, a medical expert for the Social Security Administration, about some of Plaintiff's medical records. Specifically, the ALJ asked Dr. Cooke to explain a medical report written by a Dr. Saleeby in which Dr. Saleeby records that the Plaintiff exhibited positive Waddell signs for "axial loading associated with pain in the low part of the back." (R. at 303-05, 386-87.) Dr. Cooke explained:

13

> Waddell's signs are a sign or signs, a group of findings, that would suggest symptom magnification or lack of overt organic cause of something . . . in Waddell's sign or signs, if you touch an area it will be painful when there is no anatomic or objective medical reason for it to be that way . . . So there is a suggestion here, and a rather strong one, that there's a good deal of symptom magnification.

(R. at 386-87.)

In addition to his questions and explanations at the hearing, the ALJ also noted in his opinion that the fact that the Plaintiff "has been seen by so many different pain clinics and changed so many different primary care physicians raises a red flag according to medical reports." (R. at 20.) The ALJ explained further that none of Plaintiff's treating sources indicated that Plaintiff's limitations would preclude him from work related activity, and concluded that the record does not "document anything more than mild restrictions of activities of daily living, moderate restriction in maintaining social functioning, and moderate restriction of maintaining concentration, persistence, or pace." (R. at 20.)

The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. The ALJ found that the Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and a psychiatric disorder variously diagnosed as panic or anxiety, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-17.) The ALJ found that while these impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible and reflect symptom magnification. (R. at 20.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of his pain was less then credible. The record

additionally indicates that the ALJ's opinions were based on the medical evidence before him, and not on his personal biases against the Plaintiff. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC are based on substantial evidence in the record and should not be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 7) be DENIED; that Defendant's motion for summary judgment (docket entry no. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: October 14, 2008
Richmond, Virginia